Case number 20-1076 et al. St. James Medical Group petitioner v. National Labor Relations Board. Mr. Potter for the petitioner, Ms. Cheehy for the respondent. Morning Council. Mr. Potter, please proceed when you're ready. Thank you. Excuse me. Yes, my name is Terry Potter, as noted. Council for the petitioner in this matter, and as you know from the briefing, this concerns a determination. In particular, this case arises out of an organizing campaign of my client's facility, medical clinic in Butte, Montana, in which the Montana Nurses Association organized a group of RNs into a bargaining unit. During the preliminary proceedings in this case before the board, we took the position of the employer that the proposed unit was inappropriate, that we had other professionals working in the clinic who should be included in that unit. And therefore, we litigated that in a hearing. The regional director disagreed with us, certified a unit of RNs only, went to an election, the union won the election, you know, and therefore we have through various procedures, as you know, contested it further by testing the certification. And so here we are. And the main basis for our dispute in this decision by the board is the fact that it's not following its own guidelines. As you recall, for many years, specialty health care was the standard in determining bargaining units before the NLRB. That case was overturned by a case called PCC Structurals in 2017. And it changed the standard in many ways. And in particular, what it did in making its determinations on these unit issues, is that they do a much more robust analysis of the distinctions between those individuals included in the bargaining unit and those excluded. And our complaint here is that they didn't do that robust analysis. And in particular, so it was how, in analyzing that argument that they didn't, the board didn't sufficiently hew to the standard of explanation, right? We review, we don't review that, we review that de novo, do we just sort of look at it and say, is this a sufficient explanation? Or do we simply ask whether the board's conclusion that this was a sufficient explanation as required by its precedent, because it would apply the wrong thing? We ask only whether it was sort of arbitrary and capricious or in reason for them to think, to conclude on this record, that they had explained to the same degree as their precedent requires. I think the standard is, you know, is arbitrary and capricious because you're not following your own standards. Right. So we don't go and so it's not sort of, well, it doesn't look quite enough to us, it would have to be so clearly off the mark from prior precedent that we would call it arbitrary and capricious. Right. Okay. So, so again, the dilemma is on this new standard. And again, this is, you know, two years after PCC had issued and there have been all sorts of guidance issued internally with the board. They just didn't do their, they didn't do their job. They did what the Boeing case, which clarified PCC standards and came back, came down in 2019, said you shouldn't do. All they did was have a checklist of the various characteristics of those in the bargaining unit, those outside the bargaining unit, and then come to conclusionary statements regarding who's going to be in and who's going to be out. Instead of saying, look, you know, this issue is important in terms of a context for these reasons. They didn't do that. They went to the, they went to the old format, which frankly, when I worked for the board, I was as guilty as anybody where, yeah, you submitted the laundry list of distinctions that were set out and the record, and then you come to a final conclusion as to who's in and out without expressing why one set of distinctions or similarities, again, weighing, the cases say you have to weigh the similarities and the disparities. There's no weighing here and there's no analysis. And that's our number one concern in this case is that they simply did not do that. And it's a very summary analysis. You know, they harp on quite a bit in the decision about the fact that the nurses have specialized training distinct from the professionals. Well, the problem with that sentence is that the very definition of a professional employee under the NLRA is someone having specialized training. Everybody who's a professional has specialized training. So that doesn't add value to the analysis. Well, but nobody, they didn't say that it was because they had specialized training. It was because they had different specialized training. There were differences in their specialized training that gave them different roles in the medical care process. I don't, I don't think we, I don't think we, I don't think we'd be able to say it was arbitrary because they just said they were specialized. Well, I know, but there's a cumulative effect and the fact that, you know, again, the decision itself talks about specialized training, in particular for the nurses and their unique licensing being the distinctions here. But again, I will tell you, it doesn't say different specialized training. It says specialized training. No, but they're different. But it talked about how there's further training for the people who are the... Oh, I agree. I agree. That's what they, you don't think that's what they're referring to? Well, the thing is, again, it's the problem is it's not elaborated upon. That's the issue. Isn't that self evident that the nurses specialized training is different than the social workers specialized training? Yeah, I think so. But why is that? Why does that make a difference? That's what say, okay, there's different specialized training. Why does that make a difference for including or excluding those folks in the bargaining unit? That's the key. And once you get that concept in your head, you understand why this analysis and the decision doesn't work. They don't apply the standards that they have set forth in PCC and Boeing. And again, if you look at the Boeing case in particular, over and over again, it says, you can't do these laundry list of distinctions and stop there. If you point to me in the Boeing case, which of course hadn't yet been decided at the relevant time here, but pointing to it, it does this step two analysis on pages five and six. So can you point to me sort of the best example on pages five to six of where they did the type of analysis the, they didn't just say, you know, this is different from that, but that difference matters because would you be able to point to me just so I have a better sense? I think it'll make it more concrete for me if I have a better sense. I understand. You know, I, frankly, I have not looked at that for so long. It'd be hard for me to do that quickly. Okay. Well, maybe on rebuttal, you could point out on page five or six where they do their analysis. There is sort of the sentences that do the, this is different because this matters for collective bargaining because it's that type of because sentence that I took to be your emphasis here that that's what's missing in this case. And so, um, would helpful be helpful to me at least. Sure. No problem. Any other questions? Does it matter that PCC structurals, uh, the, the, the board's decision has been argued before our court in November. Did you know that? I did not know that it's pending decision. Can I ask you, I have one other question if it's okay. Um, you, you make an argument about a risk of residual units here. Um, the, the people at the advanced practice practitioners to use the sort of global term you use for the people that aren't included. Um, I think they're about the same in number as the nurses here. Right. Um, so why is there a risk of residual unit? Why couldn't they just do their own unit? They could, but then you get into issues like, um, you know, again, the policy about undue proliferation. That's a different, right. So I'm asking you what, what your evidence in the record is of, um, uh, residual units and people who are left over, who won't be able to form. That's what I wasn't clear about. I think, yeah, I mean, again, just flip sides at the same point. I mean, residual units, you know, there's a lot of factors that come into play regarding, it doesn't work well having that end product, especially when you have, uh, other professionals. I mean, why wouldn't you have an office normally? I'm just asking your evidence, what your evidence in the record, uh, here that there was going to be a risk of residual units because that, for example, the because of all the commonalities that you noted and their size is sufficient. Right. I mean, but that would be five employees, you know, normally unions don't go out and organize five employees. It just doesn't happen. So they're probably not going to be part of any bargaining units. Um, you know, that's one factor. Um, if they do to become a part of a, of a separate union, um, then again, you've got their proliferation argument where you're having all these that may result in disputes and one union honoring picket lines of other unions. And then, you know, you just got all this patient interruption coming into play, um, you know, and, and, and again, the proliferation issue and the decision that the regional director refers to the rule, um, the healthcare rule, um, for acute care facilities that are ends are an appropriate separate unit. But, but that's only for acute care hospitals. It's not for non acute. That's what we're doing with here is a medical center, a medical clinic. Thank you. Um, if my colleagues don't have any further questions for you, Mr Potter with her from the board and then we'll give you a rebuttal time. Good morning, your honors. Barbara Sheehy for the National Labor Relations Board. Um, I think I just want to start with just backing up and we put this in a brief, but I really think it warrants highlighting that. And I'm sure the court is aware of this again. I'm just gonna highlight it. The decision here is that the RNs were an appropriate unit. And I think sometimes lost in this discussion is, could there have been a better unit or could these people be in the unit? But I think the focus, I just want to make sure all the time, even if I misspeak all the time that the focus is on that the board made a determination that's uniquely within its province, right? I mean, this is a that the nurses in this non acute care facility were an appropriate unit. So I wanted to start there. As I said, I'm sure the court is well aware of that, and we put that in our brief. But I do think, uh, that the entire case has to be viewed through that prism, I think. Uh, and beyond what we put in our brief, unless the court has other questions, I feel like I would just be reiterating what we put in our brief. We a checklist. The board walked through the distinct interests. I think it's also being forgotten a little bit in the briefing that the board is not writing on a clean slate. This regional director was not starting from scratch. There we go. Go back 35 years for the health care rule. Two years worth of data codified in that. And then beyond that, there's the 30 years after that of precedent. So beyond, like I said, repeating what's in our brief, unless the court has specific questions for me, their response to their argument about Boeing, the about that Boeing. I think we responded in our brief that that our response in in Boeing is that and I think your honor's right. Unfortunately, I just tried to pull up Boeing, but I mean, Internet issues in my house, so I'm gonna have to go just on memory. But it's not my recollection in Boeing that the court sorry that the board goes through and lists all the factors and says this is important because this is important because this difference is important because rather than do that, because I don't again, it's my recollection. So if I'm wrong, I'll stand corrected on Boeing. So but I don't think that the board in Boeing did anything different than what the board did here, except in in an analytical sense, certainly in a written sense they did right. The board here leaned heavily into precedent and relying on cases that frankly set forth what all these differences are, why these are sorry that these interests are distinct and that that satisfies them the second prong of the community interest standard that they are sufficiently distinct from the other people trying to be included in the unit, the excluded employees. So I don't I think really the only difference here between Boeing in the analytical sense between Boeing and what the board did here is they again not writing on a clean slate. They just leaned into precedent and cited the five of the most on point five cases. And frankly, I'm unaware of any case that is more that I'm not aware of any case beyond the five that the board sites that are more on point. Certainly the employer when it filed its request for review when it filed its post hearing brief, they cited cases, they're predominantly the same cases that are cited to the did exactly the same as it did in Boeing. As I think it did the same in both cases to answer your honor's question. Thank you. Can I ask you from the the board's from the board's perspective, does what is the relevance of dependency of the PCC case judge Randolph raised and, and in particular is the underlying framework in PCC this from from your perspective at issue in that case, or is just the application of the framework to the board. So I'm familiar with the cases pending, I know that there's been argument, but I didn't read the briefs in the case, and it wasn't my case. So I'm going to hedge a little on the answer to say if those big if if the framework is an issue, if the court is being asked to review whether the board properly reverted to its pre specialty healthcare standard. So if the standard is in play, and the court, for some reason, does something in PCC structurals that calls into question the board reverting to a pre specialty healthcare standard, then I think since the board here applied PCC structurals and its mandate to go pre specialty healthcare, I think that we would have to ask for a remand at that point, because there's a new framework. If that's not what the issue in PCC structural if the standard is going to be is not, like I said, I'm not familiar with what exactly is in play there. But if, if PCC structural does nothing, if the court does nothing in that case, or doesn't have the opportunity because it wasn't briefed that way, to do anything with the standard, then, then this case just goes forward as as it as it's been briefed. Let me see if my colleagues have further questions for you machine. Hearing none. Unless you have anything further, we'll give Mr. Potter his rebuttal time. I don't thank you very much. Thank you, Michi. Mr. Potter will give you 10 minutes for your rebuttal. Thank you. Well, to go back to your original question about page five and six regarding Boeing, I think if you just look at page five, in particular, where they start with the step two process shared interests of excluded employees. And the third full paragraph, they start analyzing, you know, some of the shared interest and distinct interest. And then you go over to the next column, the next paragraph, it says, by contrast, so again, they're starting to analyze the distinctions between the two groups. It's not simply a laundry list that's being laid out. But they did that in this case, as well, I'd say the differences are relatively insignificant in the context of collective bargaining, but I don't see any because which I thought you wanted to because sentence. Yeah, I made the same conclusion in this case that they agree that the regional director agreed that there are some things that they had in common. I mean, it's a little hard to transpose the words because they were finding the group here and they didn't there. But they said, Yeah, sure, there are some things that they have in common. But they are not they don't outweigh the factors. They don't carry much weight because they're things in common that all employees have. So I just don't see the because stuff that I thought you want. You said they well, I think I think in particular, it's just it's just as much of anything. It's just the lack of analysis. I mean, it's very conclusionary in our case. You know, we find that there are not significant distinguish might have been a shorter list of factors. Well, no, we turned the page before. And there's there's a whole laundry list of different factors that come into play. And most of those aren't even addressed. Okay. This looks to me like a list of factors that are in and are out, just like that one is maybe a longer list. I think if you don't see the analysis, I thought your objection was not that they didn't just talk long enough about the factors, but that they didn't. You said it was conclusory. They didn't say why it mattered. And I'm looking. That's what I was looking for. Here was the why statements. Well, again, if you look at Boeing in depth and you go through this analysis, you know, there's a lot on page five in particular. Okay. You don't have a particular sentence. You can point me to that. Does that why analysis? Well, I don't think so. Um, great. All right. Thank you, Council. Thank you to both Council. We'll take this case under submission.
judges: Srinivasan, Millett, Randolph